UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
TYRONE HOLMES,                                            :

                                                         :            12 Civ. 6299 (GBD) (DF)

                                      Plaintiff,         :            **REPORT AND**
                                                         :            **RECOMMENDATION**

                    -against-
                                                         :

PARADE PLACE, LLC; SAADIA M. SHAPIRO, a/k/a
SAADIA M. SHAPIRO, ESQ.; MARLA SHAPIRO;                   :
75 EAST 125th, LLC; RISHUM TITLE AGENCY &
LAND SERVICES, LLC; CHICAGO TITLE                         :
INSURANCE COMPANY; COHEN TAUBER
SPIEVACK & WAGNER, LLP; LIBERTY POINTE                    :
BANK/VALLEY NATIONAL BANK,

                                                         :

                                      Defendants.
----------------------------------------------------------------------X

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

Six separate motions are currently pending before this Court for a report and

recommendation, as follows:

### Defendants' Motions To Dismiss the Complaint

(1)   <u>Dkt. 4</u>:  Motion to dismiss the Complaint filed by defendant Cohen Tauber
       Spievack & Wagner, P.C. ("Cohen Tauber").

(2)   <u>Dkt. 14</u>:  Motion to dismiss the Complaint filed by defendant LibertyPointe
       Bank/Valley National Bank ("VNB").

(3)   <u>Dkt. 24</u>:  Motion to dismiss the Complaint filed by defendants Parade Place, LLC
       ("Parade Place"), Rishum Title Agency & Land Services, LLC ("Rishum Title"),
       Marla Shapiro ("Marla"), and Saadia M. Shapiro ("Saadia") (Marla and Saadia,
       together, the "Shapiros").

(4)   <u>Dkt. 30</u>:  Motion to dismiss the Complaint filed by defendant 75 East 125th, LLC
       ("75 East 125th").

(5)   <u>Dkt. 71</u>:  Motion to dismiss the Complaint filed by defendant Chicago Title
       Insurance Company ("Chicago Title") (all defendants, collectively,
       "Defendants").

## <u>Plaintiff's Motion To Amend the Complaint</u>

(6)      <u>Dkt. 43</u>:  Motion to amend the Complaint filed by plaintiff Tyrone Holmes
("Plaintiff").

The various motions to dismiss raise a number of different arguments, but one common

thread is a challenge to the Court's subject-matter jurisdiction, based upon a lack of complete

diversity of the parties.  Although Plaintiff does not dispute that the parties to the action are not

diverse, he responds to Defendants' jurisdictional challenge by arguing that the Complaint,

which was originally filed by Plaintiff *pro se* (before he retained counsel), should be liberally

construed to plead a viable claim for civil violations of the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO"), which would give the Court federal-

question jurisdiction over the matter.  Alternatively, to address the jurisdiction issue, Plaintiff

seeks leave to amend "or correct" the Complaint, so as to plead a federal RICO claim explicitly.

Upon review of Plaintiff's original Complaint, this Court finds that it cannot be read,

even liberally, to assert a colorable RICO claim.  The Court also finds that, even reading the

allegations in Plaintiff's proposed Amended Complaint so as to afford Plaintiff every favorable

inference, the proposed amendment also does not, and cannot, state a viable RICO claim.  For

these reasons, and as discussed in greater detail below, I respectfully recommend that this action

be dismissed, in its entirety, for lack of subject-matter jurisdiction.  I further recommend that the

Court decline to address the other arguments raised in Defendants' motions, as, if it is correct

that the Court lacks jurisdiction to hear this matter, then the Court need not, and should not,

reach the merits of those additional arguments.

**BACKGROUND**

A.      **Factual Background**

Plaintiff alleges that, in 2006, he, together with the church of which he served as a

pastor – Samuel's Temple Church of God in Christ, Inc. (the "Church") – and for the Church's

benefit as a charity, entered into a real estate development deal (the "Deal") with defendants

Parade Place, the Shapiros, and 75 East 125th (collectively the "Defendant Developers").  (*See*

Complaint, dated Aug. 16, 2012 ("Compl.") (Dkt. 1), ¶¶ 2, 12-19, 42.)  Under the Deal, the

Defendant Developers purportedly agreed to purchase certain property in New York City (the

"Property") from Plaintiff and the Church, to develop that Property, and to lease it and other

contiguous properties owned by the Defendant Developers (the "Contiguous Properties") back to

Plaintiff and the Church at a nominal rate of one dollar per year, for a term of 198 years.  (*See*

*id*.)  According to Plaintiff, however, he and the Church were fraudulently induced to enter into

the Deal with the Defendant Developers, who intended to breach their contractual obligations, to

conspire with other defendants to "swindle" the Property away from Plaintiff and the Church by

fraud, and to gentrify the area by force.  (*Id.* ¶ 14; *see also id.* ¶¶ 20-33, 38-44, 46-47; *id.* at 17.)

The Defendant Developers financed the purchase of the Property from Plaintiff and the

Church with a combination of cash, a promissory note executed in favor of Plaintiff and the

Church (the "Note"), and an assignment of collateral interest in the Contiguous Properties to

Plaintiff and the Church.  (*See id.* ¶¶ 12-19, 42-43.)  The Deal closed on or about August 17,

2006.  (*See id.* ¶¶ 15-19, 23-24.)  Plaintiff claims that, shortly thereafter, in supposed concert

with defendants Rishum Title, Chicago Title, and related entities, the Defendant Developers

intentionally failed to record certain documents and instruments memorializing the Deal and

recorded false versions of others, including a deed and a transfer report (the "False Documents").

(*See id.* ¶¶ 34-37, 46.)  Then, in alleged violation of their contractual arrangements with Plaintiff and the Church under the Deal, the Defendant Developers mortgaged the Property and the Contiguous Properties with defendant VNB, so that they could extract equity therefrom and purportedly generate cash flow for other businesses.  (*See id.* ¶¶ 42-44, 47.)  All of these activities allegedly took place "within a short time space, the year 2006" and were kept secret from Plaintiff and the Church.  (Proposed Amended Complaint, dated Dec. 4, 2012 ("Proposed Am. Compl.")[1] (Dkt. 52-1), ¶¶ 84-88.)

At some later time, the Defendant Developers defaulted on their mortgage obligations, and the Property and Contiguous Properties went into foreclosure.  (*See* Compl. ¶¶ 44-45.)  Plaintiff contends that he first learned that the Defendant Developers had mortgaged the Property in January 2009, when he received notice of the foreclosure proceedings.  (*See* Dkt. 73, at 12.)  The Defendant Developers also allegedly failed to make payments due to Plaintiff and the Church under the Note, beginning sometime in 2009 or 2010.  (*See* Compl. ¶¶ 32-33 (payments were "at least twenty-four (36) [sic] months overdue" at the time of the filing of the Complaint).)

## B.    **Procedural History**

Plaintiff filed a *pro se* Complaint in this action on August 16, 2012.  (*See* Compl.)  In October 2012, all of the Defendants either filed, or attempted to file, motions to dismiss the

---

[1] Some of the facts alleged in Plaintiff's original *pro se* pleading are somewhat confusingly stated, and, therefore, in order to summarize those facts most fairly to Plaintiff, this Court has looked to Plaintiff's proposed Amended Complaint.  According to Plaintiff's counsel, the recitation of alleged facts contained in this proposed amendment is not intended to add anything new to Plaintiff's prior pleading, but rather to set out the factual background of Plaintiff's claims more clearly.  (*See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Support of Plaintiff's Motion for Leave to Amend, dated Nov. 20, 2012 (Dkt. 45), at 4-5, 9, 11.)

4

Complaint.  (Dkts. 4, 14, 24, 30, and 71.)[2]  Then, on November 1, 2012, counsel appeared for

Plaintiff (*see* Dkt. 38), and, shortly thereafter, on Plaintiff's behalf, counsel filed an opposition to

each of the pending motions to dismiss,[3] as well as a motion for leave to amend the Complaint

(Dkt. 43).[4]  The Defendants variously filed reply papers on their motions to dismiss and/or

opposition papers on Plaintiff's motion to amend,[5] and Plaintiff filed a reply affirmation on its

motion to amend that addressed all of the Defendants' oppositions.[6]

---

[2] The Docket for this case is riddled with filing errors by counsel, and several of the parties' motion or opposition papers were either misnamed on the Docket or were rejected by the Court and refiled at a later point, such that the Docket does not reflect the actual chronology of the motion practice.  The moving memoranda and supporting declarations or affidavits of the various Defendants can now be found at the following Docket entries:  Dkts. 5, 6 (Cohen Tauber memorandum and supporting declaration); Dkts. 19, 15, 16 (VNB memorandum and supporting affidavits); Dkts. 28, 27 (Parade Place, Rishum Title, and Shapiros memorandum and supporting affirmation); Dkts. 32, 31 (75 East 125th memorandum and supporting affirmation); and Dkts. 62, 63 (Chicago Title memorandum and supporting declaration).

[3] Plaintiff's opposition papers can be found at:  Dkt. 52 (memorandum in opposition to motion of Cohen Tauber); Dkt. 53 (affirmation in response to motion of VNB); Dkt. 42 (memorandum in opposition to motions of Parade Place, Rishum Title, Shapiros, and 57 East 125th); and Dkts. 73, 72 (memorandum and affirmation in opposition to motion of Chicago Title).

[4] Plaintiff's memorandum in support of his motion to amend can be found at Dkt. 45, and a supporting affirmation can be found at Dkt. 44.

[5] Cohen Tauber filed a reply memorandum on its motion to dismiss (Dkt. 64) and an opposition memorandum on Plaintiff's motion to amend (Dkt. 47); VNB filed a single memorandum in opposition to the motion to amend and in further support of its motion to dismiss, together with a reply affirmation on its own motion (Dkts. 46, 57); Parade Place, Rishum Title, the Shapiros, and 75 East 125th filed an opposition memorandum and affirmation on Plaintiff's motion to amend (Dkts. 51, 48), but no reply on their own motion; and Chicago Title, which had opposed the motion to amend in its original moving papers (Dkts. 62, 63), eventually filed a reply memorandum on its motion (Dkt. 74).

[6] *See* Dkt. 50.

## DISCUSSION

I.    **DEFENDANTS' MOTIONS TO DISMISS FOR
      LACK OF SUBJECT MATTER JURISDICTION**

   A.    **Applicable Legal Standards for Dismissal**

   A claim is "'properly dismissed for lack of subject matter jurisdiction under

Rule 12(b)(1) [of the Federal Rules of Civil Procedure] when the district court lacks the statutory

or constitutional power to adjudicate it.'"  *Kakushadze v. Chertoff,* No. 07 Civ. 8338 (DF), 2008

WL 2885292, at *4 (S.D.N.Y. July 24, 2008) (quoting *Makarova v. United States*, 201 F.3d 110,

113 (2d Cir. 2000)).  When jurisdiction is challenged, the "plaintiff[] bear[s] the burden of

showing by a preponderance of the evidence that subject matter jurisdiction exists," *APWU v.

Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted), and the court may

examine evidence outside of the pleadings to make this determination, *see Makarova,* 201 F.3d

at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)); *see also

Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (in

resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact

issues by referring to evidence outside of the pleadings, such as affidavits" (citation omitted)).

Moreover, "jurisdiction must be shown affirmatively, and that showing is not made by drawing

from the pleadings inferences favorable to the party asserting it."  *Shipping Fin. Servs. Corp. v.

Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925));

*accord APWU*, 343 F.3d at 623 (quoting *Shipping Fin. Servs*.).

   District courts have diversity jurisdiction "where the matter in controversy exceeds the

sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

States."  28 U.S.C. § 1332(a).  Diversity jurisdiction under 28 U.S.C. § 1332 requires complete

diversity between all plaintiffs on the one hand, and all defendants on the other.  *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.").  Alternatively, the federal-question statute confers subject-matter jurisdiction on the district courts over actions "arising under" federal law.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  "[I]n order to sustain federal jurisdiction, the complaint must allege a claim that arises under the Constitution or laws of the United States and that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous."  *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 306 (2d Cir. 2003); *see also Nachbaur v. Weiss*, No. 01 Civ. 0588 (NRB), 2001 WL 83233, at *2 (S.D.N.Y. Jan. 31, 2001) (finding that plaintiff's RICO claim could be dismissed "if it 'clearly appear[ed] to be immaterial and made solely for the purpose of obtaining jurisdiction.'" (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1945))).

## B.   Sufficiency of the Complaint

Here, Plaintiff concedes lack of diversity, but argues that the Court has federal-question jurisdiction because the Complaint, when read liberally, states a claim arising under federal law, namely a civil RICO claim.[7]  (*See* Dkt. 45, at 5-9.)  As a threshold matter, the Court notes that there is a question as to whether Plaintiff's Complaint, which Plaintiff filed *pro se*, is still entitled to a liberal construction, now that Plaintiff is represented by counsel.  On the one hand, it would seem that, once counsel appeared in this action on Plaintiff's behalf, counsel should

---

[7] The RICO statute provides for a private right of action.  *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court.").

have taken all steps necessary to ensure that the operative pleading was sufficient and

unambiguous.  On the other hand, any pleading drafted by a *pro se* litigant must be held to a less

stringent standard than the pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9

(1980).  Erring in Plaintiff's favor on this question, this Court finds that, even if the Complaint is

construed liberally to raise any claims that it reasonably suggests, it cannot be fairly read to

assert a RICO claim.

     "Under the longstanding well-pleaded complaint rule, . . . a suit 'arises under' federal law

'only when the plaintiff's statement of his own cause of action shows that it is based upon

[federal law].'"  *Vanden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville &*

*Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *see also Nowak v. Ironworkers Local*

*6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir. 1996) ("[I]n cases where the asserted basis for

subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action,

we ask only whether – on its face – the complaint is drawn so as to seek recovery under federal

law or the Constitution.").  This principle applies equally to complaints drafted by *pro se*

plaintiffs.  *See Monroe v. Hyundia of Manhattan & Westchester*, No. 07 Civ. 8777 (GBD)

(HBP), 2008 WL 4891223, at *6 (S.D.N.Y. Nov. 12, 2008) (applying well-pleaded complaint

rule to *pro se* complaint asserting a civil RICO claim).

     In this instance, nothing about the Complaint suggests that it is based on federal law.  To

the contrary, the Complaint explicitly asserts no fewer than nine state-law claims, including a

statutory claim for violation of the New York Debtor and Creditor Law, and state common-law

claims for breach of contract, fraud, conversion, negligent misrepresentation, promissory

estoppel, unjust enrichment, prima facie tort, and negligent infliction of emotional distress.  (*See*

Compl. ¶¶ 48-66.)  None of these claims, as framed, purports to "seek recovery under federal

law or the Constitution," *Nowak*, 81 F.3d at 1189, nor does any have any basis in federal law. By contrast, in one case found by this Court in which a *pro se* complaint was construed to include a federal RICO claim, the plaintiff had "peppered his Amended Complaint with the word 'racketeering'" and had alleged that certain defendants had "[c]ommunicated . . . illegally . . . by mail," as members of a "Federal Conspiracy."  *Homeless Patrol v. Joseph Volpe Family*, No. 09 Civ. 3628 (GBD) (FM), 2010 WL 2899099, at *15 (S.D.N.Y. June 29, 2010), *report and recommendation adopted by* No. 09 Civ. 3628 (GBD) (FM), 2010 WL 2899076 (S.D.N.Y. July 22, 2010).  These allegations were found to implicate RICO, even though the claim was ultimately held subject to dismissal for failure to plead all of the necessary RICO elements.  *See id*. at *16.  In this case, though, Plaintiff makes no mention at all of racketeering, mail fraud, or any other conduct that, on its face, implicates a federal claim.

Despite the fact that he specifically pleaded only state-law claims, Plaintiff now invites the Court to draw the inference that the common-law fraud he alleges was committed "through the mail or through electronic wires," thus transforming Defendants' acts into mail fraud or wire fraud, sufficient to serve as a predicate for a civil RICO violation.  (*See* Dkt. 45, at 6.)  Plaintiff then asks the Court to infer that "the pattern-of-racketeering activity" that must be pleaded to satisfy the elements of civil RICO (*see* Discussion *infra*, at Section II(B)(2)(2)(i)) "can be seen or inferred from" this purported mail or wire fraud (*see* Dkt. 45, at 6).  Such inferences – which are not actually supported by any pleaded facts about Defendants' use of the mail or electronic wires – would be far too strained to be reasonable.  *See Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (holding that, on motion to dismiss, the court should "draw all *reasonable* inferences in favor of plaintiff") (emphasis added; citation and internal quotation marks omitted).

Moreover, as set out above, where a defendant moves to dismiss a pleading for lack of jurisdiction, the court's jurisdiction "must be shown affirmatively" by the plaintiff, and it is not enough for the plaintiff to rely solely on inferences drawn from his complaint.  *APWU*, 343 F.3d at 623; *see also Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 467 (S.D.N.Y. 2001) ("In assessing a motion to dismiss for lack of subject matter jurisdiction, a court must 'accept as true all material factual allegations in the complaint,' but refrain from 'drawing from the pleadings inferences favorable to the party asserting jurisdiction.'" (quoting *Shipping Fin. Serv. Corp.*, 140 F.3d at 131)).  By asking the Court to find subject-matter jurisdiction based solely on a purported federal claim neither facially pleaded nor supported by the necessary factual allegations, Plaintiff has failed to meet his "burden of showing . . . that subject matter jurisdiction exists." *APWU*, 343 F.3d at 623.

Accordingly, unless Plaintiff's Complaint can be saved by amendment, it should be dismissed for lack of subject-matter jurisdiction.

## II.   <u>PLAINTIFF'S MOTION TO AMEND</u>

As Plaintiff concedes a lack of diversity, and as the Complaint does not fairly present any federal question, the Court must dismiss the Complaint for lack of subject-matter jurisdiction, unless Plaintiff's proposed amendment can cure the jurisdictional defect.  In this regard, Plaintiff asserts that any amendment necessary to render his purported RICO claim viable would need to make only "*de minimus*" additions to his original *pro se* Complaint.  (*See* Dkt. 45, at 9 (arguing that, to the extent the Court finds the allegations of the Complaint insufficient to state a federal RICO claim, an amendment could readily provide "the usual legalistic verbiage or a sub-element that has not been mentioned in enough detail").)  For the reasons discussed below, this Court disagrees that the jurisdictional defect evident in Plaintiff's *pro se* Complaint is curable by

10

amendment.  Rather, this Court finds that it would be futile to allow Plaintiff to amend his

Complaint, and that his motion for leave to amend should thus be denied.

### A.       Applicable Legal Standards for Amendment

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave

[to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A motion to amend a pleading

under Rule 15(a) should be denied, however, "if there is an 'apparent or declared reason – such

as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of the

allowance of an amendment, [or] futility of amendment.'"  *Dluhos v. Floating and Abandoned*

*Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371

U.S. 178, 182 (1962)); *accord Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6

(2d Cir. 1987) (citation omitted).  An amendment is considered futile when the proposed new

claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  *Panther Partners Inc., v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir.

2012).

Thus, when a proposed amendment is challenged as "futile," the Rule 12(b)(6) standards

become relevant.  A case is subject to dismissal under Rule 12(b)(6) where the complaint is not

legally sufficient to state a claim upon which relief can be granted.  *See Kopec v. Coughlin*, 922

F.2d 152, 155 (2d Cir. 1991).  In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true

all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of

the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)

(citation omitted); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329

(2d Cir. 1997).  At the same time, "conclusory allegations or legal conclusions masquerading as

factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  To survive a motion to dismiss, a complaint must "state[] a plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 666).

## B.   Viability of the Proposed Amendment

Plaintiff moves for leave to amend the Complaint to add the Church as a plaintiff and to assert a civil RICO claim.[8]  Defendants raise two different arguments as to why any RICO claim that Plaintiff seeks to raise by amendment would not be viable.  First, Defendants argue that, based on Plaintiff's own proposed allegation that all of the conduct relating to the alleged RICO violation occurred in 2006, a RICO claim would be untimely under the applicable four-year statute of limitations.  Second, Defendants argue that the misconduct that Plaintiff ascribes to them, even taken as a whole, cannot satisfy RICO's various substantive requirements, including the requirement that the illegal conduct be sufficiently "continuing" to demonstrate a pattern of racketeering activity.  While Defendants cannot prevail, at this stage, on the first of these arguments, their second argument is more persuasive, as discussed below.

---

[8] In this Report and Recommendation, this Court does not separately address the proposed joinder of the Church as a plaintiff, as it is irrelevant to the Court's threshold jurisdictional analysis.  Although the proposed Amended Complaint seeks to allege that Defendants violated the rights of both Plaintiff and the Church under RICO, any RICO claim that the Church is seeking to assert, on its own behalf, would suffer from the same pleading defects as Plaintiff's proposed claim.

1.     **Timeliness of the Proposed RICO Claim**

    a.     **Governing Statute of Limitations**

The statute of limitations governing civil RICO claims is four years, and the Second

Circuit applies a "discovery accrual rule" to determine when the limitation period starts to run.

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d. Cir. 2013); *see also Rotella v. Wood*, 528

U.S. 549, 552 (2000). This means that the four-year "limitations period for a fraud-based RICO

action commences when [p]laintiffs [discover the RICO injury or] are placed on notice of facts

which should arouse suspicion" that they were injured. *Kinley Corp. v. Integrated Res. Equity*

*Corp.* (*In re Integrated Resources, Inc. Real Estate Ltd. P'ships Sec. Litig.*), 851 F. Supp. 556,

567 (S.D.N.Y. 1994); *Cohen*, 711 F.3d at 361. Put differently, "'the limitations period does not

begin to run until [a plaintiff] ha[s] actual or inquiry notice of the injury.'" *Koch v. Christie's*

*Int'l PLC*, 699 F.3d 141, 150-51 (2d Cir. 2012) (alterations in original) (quoting *In re Merrill*

*Lynch Ltd. P'ships Litig.*, 154 F3d 56, 60 (2d Cir. 1998)).

"Whether a plaintiff was placed on inquiry notice is analyzed under an objective

[reasonable person] standard" in light of the totality of the circumstances. *Staehr v. Hartford*

*Fin. Servs. Grp.*, 547 F.3d 406, 427 (2d Cir. 2008). Inquiry notice is established when the

plaintiff has actual or constructive knowledge of information that "relate[s] directly to the

misrepresentations and omissions the [p]laintiff[] later alleges in [his] action against the

defendants," *Staehr*, 547 F.3d at 427 (internal quotation marks omitted), and that suggests "the

*probability* and not merely the *possibility* that [a RICO injury has] occurred," *Fezzani v. Bear,*

*Stearns & Co.*, 384 F. Supp. 2d 618, 634 (S.D.N.Y. 2004) (quoting *Lenz v. Associated Inns &*

*Rests. Co. of Am.*, 833 F. Supp. 362, 370 (S.D.N.Y. 1993)). A plaintiff's actual or constructive

knowledge of these so-called "storm warnings," *see Koch*, 699 F.3d at 151, triggers a

corresponding "duty to inquire," which can be discharged only through the exercise of reasonable diligence in the investigation of the probable RICO injury.  *See Cohen*, 711 F.3d at 361-62.

While the Second Circuit has recognized that "whether a plaintiff had sufficient facts to place it on inquiry notice is often inappropriate for resolution" as a matter of law, dismissal may be appropriate "[w]here the facts needed for [such] determination . . . can be gleaned from the complaint and papers . . . integral to the complaint." *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir. 2003) (quoting *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 352 n.3 (2d Cir. 1993)).  It is, however, the defendant's burden to establish inquiry notice, and this burden is a "heavy" one.  *See Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 234 (S.D.N.Y. 2006).  "[O]n a motion to dismiss, unless [d]efendants can produce uncontroverted evidence that irrefutably demonstrates when [the] plaintiff discovered or should have discovered the fraudulent scheme, they cannot satisfy the heavy burden of establishing inquiry notice as a matter of law." *Id.* at 234 (internal quotation marks and citation omitted).

### b.    Application of Statute of Limitations in this Case

Here, Defendants argue that, if the factual allegations in the proposed Amended Complaint are to be taken as true, then Plaintiff's proposed RICO claim must be considered time-barred because the pleading itself states that all of the purported RICO violations occurred in 2006, more than four years prior to the commencement of this action.  (*See, e.g.*, Dkt. 74, at 6 (defendant Chicago Title arguing that Plaintiff's "putative civil RICO claim is . . . time-barred . . . . [because] the alleged 'racketeering activity' forming the basis for his RICO claim 'happened within . . . the year 2006' [and] Plaintiff commenced this action in 2012, two-years after the four-year statute of limitations period expired").)  This argument, however, misreads the law.

14

Regardless of whether the putative RICO violations that allegedly caused Plaintiff's injury occurred in 2006, "the limitations period begins to run 'when the plaintiff *discovers* or *should have discovered* the RICO injury.'"  *Cohen*, 711 F.3d at 361 (emphasis added) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998)).  Thus, the key question for the Court's statute-of-limitations inquiry is when Plaintiff discovered or should have discovered his injury, not when Defendants allegedly violated RICO.  *See Bankers Trust Co.*, 859 F.2d at 1105 ("[E]ach time plaintiff discovers or should have discovered an injury caused by defendant's violation of [RICO], a new cause of action arises as to that injury, regardless of when the actual violation occurred.").

Defendants also seem to suggest that the mere fact that, according to the proposed Amended Complaint, Plaintiff participated in the Deal transaction is sufficient to show that Plaintiff was necessarily on actual or inquiry notice of his alleged RICO injury at the time of the transaction itself, in 2006.  (*See, e.g.*, Dkt. 64, at 2; Dkt. 74, at 2.)  Defendants, however, point to no specific factual allegations in the proposed Amended Complaint that would enable the Court to find such notice as a matter of law.  Moreover, Plaintiff seeks to plead that, through a variety of acts and omissions, Defendants initially *concealed* the fraudulent nature of their conduct and the negative consequences that it would have for Plaintiff.  (*See* Proposed Am. Comp. ¶¶ 29-33, 35, 48, 84, 87.)  These allegations of concealment preclude any finding, at this stage, that engaging in the Deal itself placed Plaintiff on notice of his claimed RICO injury.

Finally, Defendants contend that Plaintiff should be found to have been on inquiry notice of his injury more than four years prior to the commencement of this lawsuit because the purportedly False Documents that underlie Plaintiff's claim were publicly available in 2006.  (*See* Dkt. 64, at 2.)  Plaintiff does not dispute that these documents "relate[] directly to the

15

misrepresentations and omissions" that form the basis of his proposed RICO claim.  *Staehr*, 547 F.3d at 427 (alterations in original).  Further, the proposed Amended Complaint itself alleges that Defendants recorded these documents shortly after the Deal closed.  (*See* Proposed Am. Compl. ¶¶ 38-41, 50.)  The question is whether the recording of these documents, as alleged in the proposed Amended Complaint, itself would have been sufficient, as a matter of law, to demonstrate that Plaintiff had actual or constructive "knowledge of facts that would suggest to a reasonably intelligent person the probability that the person has been injured."  *Koch*, 699 F.3d at 153.

In the context of securities fraud, publicly available information like press reports and SEC disclosures can constitute sufficient "storm warnings."  *See, e.g.*, *Shah v. Meeker*, 435 F.3d 244, 249-52 (2d Cir. 2006) (collecting cases), *abrogated on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).[9]  Similar information can also put a plaintiff on inquiry notice of a civil RICO claim, especially when the plaintiff relies on such information to support the allegations in the complaint.  *See Koch*, 699 F.2d at 153 (finding that numerous press reports questioning provenance of wine purchased by plaintiff were sufficient to place him on inquiry notice that defendants had fraudulently misrepresented the wine's provenance).  Nevertheless, this Court cannot determine, from the face of the proposed Amended Complaint, that Plaintiff was necessarily on inquiry notice in 2006, merely because of the alleged recording of the False Documents.

The documents that, in this case, Plaintiff claims were false were not the kind of materials, like press releases, well-publicized court proceedings, or disclosure filings with

---

[9] *See Koch*, 699 F.3d at 152 ("The Second Circuit's 'pre-*Merck*' securities fraud cases grounded on [the] inquiry notice doctrine [remain] applicable to RICO actions.").

regulatory agencies, of which plaintiffs are typically charged with knowledge as a matter of law.[10]   Defendants fail to point to any factual allegation in the proposed Amended Complaint, other than the allegation that the False Documents were recorded, to support their contention that Plaintiff should be charged with having knowledge of the False Documents in 2006, so as to place him on inquiry notice of his RICO claim at that time.  *Cf. Staehr*, 547 F.3d at 435 (finding that certain publicly available information, including a filed lawsuit "that received no publicity whatever . . . and that did not . . . result in published or broadly disseminated opinions," was insufficient to provide inquiry notice as a matter of law).  Merely because hindsight shows that Plaintiff *could* have discovered his alleged RICO injury from publicly available documents does not mean that he reasonably *should* have discovered his injury.  *See Cohen*, 711 F.3d at 363 (noting that, even where a duty to inquire has already been triggered, just because "hindsight shows that the fraud *could* have been discovered, that fact does not support the conclusion that, on reasonable inquiry, the fraud *would* have been discovered").

On this point, the Second Circuit's recent decision in *Cohen* is instructive.  Years prior to commencing that action, the plaintiff had commenced a separate suit, in 1991, seeking to set aside the financial provisions of a 1989 separation agreement that she had entered into with her husband, claiming that the agreement had been procured by fraud.  *See id.* at 357-58.  In the

---

[10] For example, one of the alleged False Documents here was a deed and, under New York law, while a subsequent *purchaser* of real property is "charged with knowledge of all deeds filed with the proper authorities," *Whitehall Tenants Corp. v. Whitehall Realty Co.*, 133 F.3d 908, 911 (2d Cir. 1997) (citing *Doyle v. Lazarro*, 306 N.Y.S.2d 268, 270 (2d Dep't 1970), *aff'd* 353 N.Y.S.2d 740 (1974)), a *seller* of real property, like Plaintiff, is not charged with knowledge of all deeds recorded after the sale, *see* N.Y. Real Prop. § 291 (McKinney 2013); *Witter v. Taggart*, 78 N.Y.2d 234, 238, 577 N.E.2d 338, 340 (1991) (recording system "charge[s] a *purchaser* with notice of matters . . . in the record of the purchased land's chain of title back to the original grantor") (emphasis added).

context of that action, the plaintiff alleged that her husband had previously misrepresented as worthless a certain investment vehicle.  *Id*.  Plaintiff's husband disputed that allegation, and the 1991 action resulted in a 1992 settlement, which included a revised separation agreement between the parties.  *See id.* at 358.  In 2008, though, the plaintiff allegedly discovered a 1987 court filing from another lawsuit, commenced by her husband, in which her husband had disclosed (contrary to his position in the plaintiff's suit) that he had received a significant sum of money from that investment vehicle.  *Id.*  This led the plaintiff to file a new action, in 2008, in which she asserted a civil RICO claim against her husband, based on allegations that he had fraudulently concealed payments owed to him from the investment, and arguing that, under the revised separation agreement, she was entitled to a portion of those payments.  *Id.* at 358.

The defendant husband moved to dismiss the 2008 RICO suit as untimely, arguing that the plaintiff was on inquiry notice of the alleged fraud in 1991, at the latest – *i.e.*, at the time the parties settled her first lawsuit.  *See generally id.*  The district court granted the motion, but the Second Circuit reversed, finding that the plaintiff was not on inquiry notice as a matter of law in 1991 and that, even if the plaintiff's duty to inquire was triggered in 1991 by her suspicions that the defendant had fraudulently reported the value of the investment, the exercise of reasonable diligence in discharging that duty did not require the plaintiff to uncover the defendant's separate 1987 lawsuit relating to the same investment.  *See id.* at 362-63.  The court stated:  "While in some cases we have found that a plaintiff, in the exercise of reasonable diligence, should have discovered public lawsuits . . . it does not follow that reasonable diligence will in all circumstances result in discovery of any lawsuit."  *Id.* at 363 (citation omitted).

In light of the *Cohen* decision, the public availability of the alleged False Documents cannot, standing alone, be held to be sufficient – as a matter of law – to have placed Plaintiff on

inquiry notice of his claimed RICO injury.  Defendants fail to point to any other facts alleged in the proposed Amended Complaint which demonstrate that Plaintiff should have discovered the False Documents or his RICO injury before he became aware of the Foreclosure Proceedings in 2009.  Thus, Defendants fail to "satisfy the heavy burden of establishing [actual or] inquiry notice as a matter of law."  *Lapin*, 506 F. Supp. 2d at 234 (quotation omitted).

For all of these reasons, Defendants have not shown that the statute of limitations would necessarily bar Plaintiff's proposed RICO claim, and the proposed amendment should not be rejected on that basis.

2.      <u>**Sufficiency of Plaintiff's Substantive RICO Allegations**</u>

a.      <u>**Requirement of "Pattern of Racketeering Activity"**</u>

RICO makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control any enterprise which is engaged in, or the activities of which affect interstate commerce."  18 U.S.C. § 1962(b).  As noted by the Supreme Court, "the RICO statute provides that its terms are to be 'liberally construed to effectuate its remedial purposes.'"  *Boyle v. United States*, 556 U.S. 938, 944 (2008) (quoting Pub. L. No. 91-452, § 904(a), 84 Stat. 941, 947 (1970)).  Nonetheless, "[b]ecause the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants" and because "the allure of treble damages, attorney's fees, and federal jurisdiction presents a powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO," courts have noted that they "have an obligation to scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud."  *Rosenson v. Mordowitz*, No. 11 Civ. 6145 (JPO), 2012 WL 3631308, at *4-5 (S.D.N.Y. Aug. 23, 2012); *see also Kirk v.*

*Heppt*, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) ("[C]ourts . . . must be wary of putative civil

RICO claims that are nothing more than sheep masquerading in wolves' clothing.") (internal

quotation marks omitted); *Fuji Photo Film U.S.A. v. McNulty*, 640 F. Supp. 2d 300, 308-09

(S.D.N.Y. 2009) ("Civil RICO should not be used to transform a garden variety fraud or breach

of contract case . . . into a vehicle for treble damages.") (internal quotation marks omitted).

Moreover, "'RICO claims premised on mail or wire fraud must be particularly scrutinized

because of the relative ease with which a plaintiff may mold a RICO pattern from allegations

that, upon closer scrutiny, do not support it.'" *Gross v. Waywell*, 628 F. Supp. 2d 475, 493

(S.D.N.Y. 2009) (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir.

2000)).

   In order to state a civil RICO claim, a plaintiff must adequately plead a number of

elements, including that the defendant engaged in a "pattern of racketeering activity."  *See* 18

U.S.C. § 1962(a)-(c); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).[11]  To establish

a "pattern of racketeering activity," Section 1961 requires "at least two [predicate] acts[12] of

racketeering activity, . . . the last of which occurred within ten years . . . after the commission of

---

   [11] "To state a claim for damages under RICO a plaintiff . . . . must allege the existence of
seven constituent elements:  (1) that the defendant (2) through the commission of two or more
acts (3) constituting a 'pattern,' (4) of 'racketeering activity' (5) directly or indirectly invests in,
or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect
interstate or foreign commerce. . . . [and, in addition, a plaintiff] must allege that he was 'injured
in his business or property *by reason of* a violation of section 1962.'"  *Moss*, 719 F.2d at 17
(quoting 18 U.S.C. § 1962(a)-(c)).  As the Court finds that Plaintiff's proposed Amended
Complaint fails adequately to allege the "pattern of racketeering activity" elements of a RICO
claim (*see* Discussion *infra,* at Section II(B)(2)(b)), the Court need not address the rest of the
elements of a RICO claim.

   [12] The RICO statute enumerates particular criminal offenses that can serve as the
predicate acts for a racketeering claim; mail and wire fraud are included among such offenses.
*See* 18 U.S.C. § 1961(1).

the prior act." 18 U.S.C. § 1961(5).  Nevertheless, "while two [racketeering] acts are necessary, they may not be sufficient" to form a pattern.  *United States v. Indelicato*, 865 F.2d 1370, 1381 (2d Cir. 1989).  To form a *pattern* of racketeering activity, the predicate acts must be sufficiently "related" to one another and must "amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 96 (2d Cir. 1997); *see also H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 240-41 (1989) (describing these "relatedness" and "continuity" requirements).

The "relatedness" requirement is satisfied "when [the predicate acts] 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Schlaifer Nance & Co.*, 119 F.3d at 97 (quoting *H.J. Inc.*, 492 U.S. at 240).  The "continuity" requirement may be met by either an open-ended or a closed-ended pattern.  *See H.J. Inc.*, 492 U.S. at 240.  While "[o]pen-ended continuity requires a showing of the existence of a threat of continuing criminal activity beyond the period during which the predicate acts were performed," closed-ended continuity is "demonstrated by a *series* of related predicate acts which occurred over a *substantial* period of time."  *Gross*, 628 F. Supp. 2d at 485 (emphasis added) (citing *H.J. Inc.*, 492 U.S. at 241; *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 241 (2d Cir. 1999)).  Thus, closed-ended continuity is "primarily a temporal concept, [although] other considerations, such as the number and variety of predicate acts, the number of participants and victims and the presence of separate schemes, may also be germane to [the] inquiry."  *Gross*, 628 F. Supp. 2d at 486 (citing *Spool v. World Child Int'l Adoption Ag.*, 520 F.3d 178, 183 (2d Cir. 2008); *Cofacredit*, 187 F.3d at 242).

## b.   Plaintiff's Factual Allegations

Regardless of whether the proposed Amended Complaint has sufficiently pleaded the other elements of a RICO violation, it is clear that Plaintiff has not plausibly alleged facts capable of demonstrating a pattern of racketeering activity.  Even accepting as true, for purposes of this motion, that Defendants engaged in predicate acts of mail or wire fraud, and that these acts were "related" to each other, in that they had the "same or similar purposes" (specifically, to deprive Plaintiff and the Church of their property), Plaintiff has not pleaded facts capable of satisfying the "continuity" prong of RICO's pattern requirement.

The gravamen of Plaintiff's proposed RICO claim is that "Defendants willfully, knowingly and intentionally deceived and defrauded the Plaintiff to obtain ownership and title to the Plaintiff's real property," through a land purchase and development deal.  (Proposed Am. Compl. ¶ 33; *see also id.* ¶¶ 35, 40, 84.)  Plaintiff also claims that he sustained damages as a result of Defendants' concurrent perpetration of a tax fraud that "adversely effect[ed] the subject property" and Plaintiff's interest in it.  (*Id.* ¶ 38.)  The proposed Amended Complaint alleges that Defendants acted "through at least two limited liability companies, Parade Place, LLC and 75 East 125th LLC, as well as other companies and corporations" and that such entities should be viewed as "enterprises within RICO."  (*Id.* ¶ 82.)  Through these putative enterprises, Defendants allegedly "conducted themselves deceptively as to reporting sales price [sic] to the taxing authority and to a title company, by making an application for financing that had not been consented to by [P]laintiff, and by failing to disclose to [Plaintiff and the Church] that [Defendants] would not honor their promise to develop the property or honor their guarantee to pay money" under the Deal.  (*Id.* ¶ 84.)  Such activity, which purportedly "happened within a short time span, the year 2006," was allegedly conducted "electronically through electrical wires

22

and/or through mail delivered by the United States Postal Service," and thus, according to Plaintiff, "amount[ed] to a pattern of racketeering activity," in violation of RICO.  (*Id.* ¶¶ 85-86, 88, 100.)

Certainly, based on the factual allegations of the proposed Amended Complaint, Plaintiff cannot establish an "open-ended" pattern of racketeering activity, because the alleged predicate acts all occurred in the past and Plaintiff makes no allegation that the challenged conduct threatened to continue.  *See Gross*, 628 F. Supp. 2d at 485 (open-ended continuity requires a "showing of the existence of a threat of continuing criminal activity beyond the period during which the predicate acts were performed").  Likewise, Plaintiff cannot establish a "closed-ended" pattern, for two reasons.

First, and most importantly, on temporal grounds alone, Plaintiff's allegations are insufficient to establish continuity.  Taking Plaintiff's proposed allegations as true, the predicate acts which form the alleged pattern all "happened within a short time span, the year 2006." (Proposed Am. Compl. ¶ 88.)  A 12-month period is not a "substantial period of time," as required to show closed-ended continuity.  *See Spool*, 520 F.3d at 184 (noting that the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time'" and that while "two years [is not a] bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity"); *GICC Capital Corp. v. Technology Fin. Grp.*, 67 F.3d 463, 468 (collecting various cases finding that, for example, periods of 12, 13, and 17 months were not substantial); *Continental Petrol. Corp. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801 (PAE), 2012 WL 1231775, at *7 (S.D.N.Y. Apr. 12, 2012) (same).

Second, the fact that "'the activities alleged [here] involved only a handful of participants' and [did] not involve a 'complex, multi-faceted conspiracy,'" further militates against finding a closed-ended pattern.  *Spool*, 520 F.3d at 184 (quoting *GICC*, 67 F.3d at 468); *see also Gross*, 628 F. Supp. 2d at 494 (contrasting a "complex, multi-faceted scheme" with "a discrete scheme with a narrow purpose [involving] a single property").  At bottom, Plaintiff claims that Defendants' alleged fraud was perpetrated through a single land purchase and development deal.  This single deal cannot properly be found to be within the ambit of RICO, especially in light of the fact that "[t]he Second Circuit has admonished district courts to 'take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO."  *Continental Petrol. Corp.*, 2012 WL 1231775, at *4 (citing *Schlaifer Nance & Co.*, 119 F.3d at 98).  This is exactly what Plaintiff is attempting to do in this case.  The alleged acts of mail and wire fraud were simply "subparts of [a] singular act" – the Deal – "and not a '*pattern*' of separate acts with an underlying purpose."  *Schlaifer Nance & Co.*, 119 F.3d at 98 (emphasis added).  One real-estate deal, even if marred by fraud, does not constitute a RICO pattern.  Nor would the type of conduct alleged here "justify RICO's extraordinary mandatory treble damages remedy."  *Gross*, 628 F. Supp. 2d at 494, 496 (noting that "allegations of RICO violations involving solely mail and wire fraud" and a "simple fraudulent scheme" are generally insufficient to justify such damages).[13]

---

[13] As Plaintiff cannot plausibly allege a substantive violation of RICO, his proposed RICO conspiracy claim is also defective.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (affirming dismissal of RICO conspiracy claim because plaintiffs failed to allege a sufficiently continuous pattern of racketeering and thus "did not adequately allege a substantive violation of RICO") (citations omitted).

For these reasons, Plaintiff's proposed amendment to add a civil RICO claim would be subject to immediate dismissal under Rule 12(b)(6) for failure to state a claim. Thus, the amendment would be futile, and Plaintiff's motion for leave to amend should be denied. Further, in the absence of a viable amendment to include a federal claim in this case, the case should be dismissed in its entirety for lack of subject-matter jurisdiction.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that the Court:

    (1)     grant each of the pending motions to dismiss (Dkts. 4, 14, 24, 30, and 71);

    (2)     deny Plaintiff's motion to amend (Dkt. 43); and

    (3)     dismiss this case in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6(d). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, Room 1310, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d

Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838

F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        August 5, 2013

> Respectfully submitted,
>
> DEBRA FREEMAN
> United States Magistrate Judge

Copies to:

Hon. George B. Daniels, U.S.D.J.

All parties (via ECF)